2007 BNH 010

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:                                                    Bk. No. 06-10423-MWV
                                                          Chapter 11
AmeriCERT, Inc.,
                Debtor

AmeriCERT, Inc.,
                Plaintiff

v.                                                        Adv. No. 06-1169-MWV

Straight Through Processing, Inc.,
                Defendant


*William S. Gannon, Esq.*
WILLIAM S. GANNON PLLC
*Attorney for Debtor–Plaintiff*

*Jennifer Rood, Esq.*
BERNSTEIN SHUR
*Attorney for Defendant*


## MEMORANDUM OPINION

The Court has before it two nearly identical motions to dismiss filed by Straight Through

Processing, Inc. (the "Defendant"); one motion to dismiss the bankruptcy case and one motion to dismiss

the adversary proceeding.  In both motions, the Defendant requests change of venue as alternate relief.

AmeriCERT, Inc. (the "Debtor") has filed objections to the motions, and the Defendant has filed replies

to the objections.  The Court heard oral arguments at an October 3, 2006, hearing, at the close of which it

took the matters under advisement.


## JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334

and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy

Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## BACKGROUND

The controversy that gave rise to both the bankruptcy case and the adversary proceeding began in the island nation of Antigua and Barbuda.  The Debtor—who, according to its statement of financial affairs, "provides financial services data center consulting, systems architecture, development, deployment and management solutions"—was involved with at least two Caribbean banks in a joint venture to purchase computer hardware and software (the "computer equipment") to be used in Caribbean banking.[1]  The Debtor was involved because it, being a United States company, could purchase the computer equipment at a discounted price.  The Defendant, an Antiguan corporation, was formed in 2003 by the banks and the Debtor to manage the computer equipment and business in Antigua.  The Debtor's president and sole shareholder, Robert Maillet ("Mr. Maillet"), was on the Defendant's board of directors.  The business relations between the Debtor, Mr. Maillet, and the Defendant are complex, and further discussion of those complexities is unnecessary for the task at hand.

Suffice to say the Debtor arranged the sale of the computer equipment, and the equipment arrived in Antigua.  However, relations between the Debtor and the Defendant soured.  On June 1, 2005, the Defendant filed suit against the Debtor, Mr. Maillet, and Mrs. Maillet in the United States District Court for the Western District of Washington, alleging unjust enrichment, unfair competition, conversion, and breach of contract (the "Washington proceeding").  The Debtor, Mr. Maillet, and Mrs. Maillet counterclaimed, alleging breach of contract, intentional misrepresentation, breach of fiduciary duty, and

---

[1]  At the time, AmeriCERT was a Washington corporation whose president and shareholder was Robert Maillet.  On October 24, 2005, the Washington entity and AmeriCERT, Inc. New Hampshire signed a plan of merger by which the Washington corporation ceased to exist, leaving AmeriCERT, Inc. New Hampshire as the sole entity.  Mr. Maillet executed the plan of merger as president of both entities. Unless otherwise indicated, the term "Debtor" refers to both the Washington and New Hampshire incarnations of AmeriCERT.

conversion.  The Washington proceeding boils down to a dispute over ownership and possession of the computer equipment.  The Defendant has retained title to the computer equipment, and the equipment itself remains in Antigua.

On October 19, 2005, a few months after the Washington proceeding commenced, the Debtor filed articles of incorporation in New Hampshire, and the Debtor's Washington entity merged into the New Hampshire entity several days later.  On April 21, 2006, the Debtor filed a voluntary Chapter 11 petition in this Court.  On June 5, 2006, the Debtor filed its adversary proceeding seeking turnover of the computer equipment pursuant to section 542 and alleging that the Defendant's continued possession and use of the computer equipment, threats against Mr. Maillet, and the continuation of the Washington proceeding are violations of the automatic stay.  The Defendant then filed the instant motions to dismiss.

## DISCUSSION

The Defendant moves to dismiss the Debtor's bankruptcy case pursuant to section 1112(b), which allows for the conversion or dismissal of a Chapter 11 case for cause.[2]  The Defendant also seeks dismissal of the adversary proceeding, arguing that, like the main case, the adversary proceeding is improperly before this Court.  The motions are identical other than the statutory basis for dismissal and the remedy, one seeks dismissal of the bankruptcy case and one seeks dismissal of the adversary proceeding.  With regard to both motions to dismiss, the Defendant seeks alternate relief of change of venue.

Section 1112(b) provides that if the movant establishes cause, the court shall dismiss or convert the case—whichever is in the best interests of the creditors and the estate—absent unusual circumstances

---

[2]  11 U.S.C. § 1112(b)(3) states that a court shall decide a motion brought under § 1112(b) not later than fifteen days after the hearing unless "compelling circumstances prevent the court from meeting" this time limit.  Admittedly, this memorandum opinion is being issued more than fifteen days after the hearing, but the Court's hearing schedule and particularly crowded submission list are compelling circumstances that caused the delay.  Also, the Court has granted the Debtor's motion for an extension of time to file a disclosure statement.  There is no time limitation for dismissal of the adversary proceeding.

that establish that conversion or dismissal is not in the best interests of creditors and the estate.  Section 1112(b)(4) states, "the term 'cause' includes—" and then lists sixteen examples of "cause."  The list is not exhaustive, and a case may be dismissed for other causes, such as bad faith or if the petition does not serve a bankruptcy purpose.  In re Gonic Realty Trust, 909 F.2d 624, 626–27 (1st Cir. 1990) (affirming dismissal for lack of bankruptcy purpose); In re Camann, 2001 WL 1757075 (Bankr. D.N.H. 2001) (dismissing for lack of bankruptcy purpose, based on lack of good faith) (unreported case); In re 3 Ram, Inc., 343 B.R. 113 (Bankr. E.D. Pa. 2006) (same).  Although amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, section 1112(b)(4)'s list of causes remains non-exhaustive.  Id. at 117; In re Jayo, 2006 WL 2433451, at *6 (Bankr. D. Idaho July 28, 2006); In re State St. Assocs., L.P., 348 B.R. 627, 639 n.24 (Bankr. N.D.N.Y. 2006).  Additionally, amended section 1112(b) was changed to afford courts less discretion.  See In re 3 Ram, Inc., 343 B.R. at 118.  Prior to its amendment, the statute provided that a court "may" dismiss the case upon finding cause, but amended section 1112(b) provides that a court "shall" dismiss if cause is found, absent unusual circumstances.

In determining whether the Defendant has established cause, the Court must assess the totality of the circumstances, including the best interests of the creditors and the purpose of the bankruptcy case.  In re Gonic Realty Trust, 909 F.2d at 626–27.  The purpose of the Bankruptcy Code is essentially (1) to encourage financial restructuring and (2) payments to creditors, while (3) preserving jobs and (4) shareholder interests.  Id. at 627.  While this list—like section 1112(b)(4)—is not exhaustive, it is a helpful guide.  "Once cause for relief is shown, the court has broad discretion for dismissing."  Id. at 626–27.

The first inquiry is whether remaining in bankruptcy encourages the Debtor's financial restructuring.  A related question is whether the bankruptcy case is actually a two-party dispute in the guise of a bankruptcy reorganization.  The Debtor is incorporated in New Hampshire, but has apparently never done business here, having incorporated shortly after the Defendant filed the Washington proceeding.  The Debtor has filed six monthly operating reports, and each shows no receipts, no sales, no

accounts receivable, no payroll, no taxes, no purchases, no leases, no insurance, and no administrative disbursement.  It is unclear what the last business transacted by the Debtor was. The submitted bank statements reveal a bank account with a negative balance.[3]

The Debtor claims that it cannot do business without the computer equipment, and in its motion to extend time to file its disclosure statement, the Debtor acknowledged that "no meaningful Disclosure Statement can be filed until the Adversary proceeding against [the Defendant] has been resolved."  (Ct. Doc. No. 20).  The entire bankruptcy case is comprised of the turnover adversary proceeding, which essentially involves the same issues that are before the Washington court.  If timely adjudication of the ownership and possession of the computer equipment is the Debtor's objective, it would not have filed bankruptcy in New Hampshire but would have pressed its cause in the Washington proceeding.  This case is a two-party dispute that the Debtor has tried to turn into a Chapter 11 reorganization.  See In re Gonic Realty Trust, 909 F.2d at 27 (dismissing when all that remained was a two-party dispute); In re 3 Ram, Inc., 343 B.R. at 119 (concluding "that there is no reorganization in progress but rather that a two party dispute persists which is not and need not be addressed in the bankruptcy forum").  Although the Debtor's complaint also seeks payments for the Defendant's use of the computer equipment and damages for violations of the automatic stay, such relief is premised on the Debtor being the rightful owner and possessor of the equipment.

The second inquiry is whether remaining in bankruptcy will encourage payments to creditors.  As discussed above, the Debtor has zero cash flow and is not transacting any business.  To make payments to creditors, the Debtor would have to (1) prevail on its turnover proceeding and possibly defend an appeal; (2) actually gain possession of the equipment, which is in Antigua; and (3) either liquidate the equipment or begin successful operations in New England, a region new to  the Debtor.  In his affidavit, Mr. Maillet acknowledges that the computer equipment would have to be liquidated "if no longer usable when

---

[3]  The Debtor filed bank statements with only the first three operating reports.

recovered by the Debtor." (Doc. No. 28, Ex. D.) Even in the best case scenario, payments to creditors are well beyond the horizon.

The third inquiry is whether the Debtor's bankruptcy is preserving jobs. The answer is no. The Debtor has no employees and pays no wages.

The final inquiry with regard to the purpose of bankruptcy is whether the bankruptcy case is preserving shareholder interests. As Mr. Maillet owns 100% of the Debtor's shares, there is little bankruptcy purpose in preserving shareholder interests.

The Court must also consider the interests of the creditors and of the estate. As for the estate, the only asset is the disputed computer equipment. With regard to creditors, they are eight in number, with one being Mr. Maillet with a $400,000 back-wages claim. Far and away the largest claimant is the Defendant, whose proof of claim is for $1,242,985.07. Three creditors are attorneys related to the Washington proceeding. Another claimant is the Debtor's former certified agent/representative. One presumable trade creditor exists, holding a claim of $14,457.08. The final claim is the Debtor's bankruptcy attorney's claim for prepetition bankruptcy advice.[4] Although the Debtor has filed a notice that three creditors have consented to venue in New Hampshire (two of which are the Debtor's attorneys related to the Washington proceeding), the Court is not convinced that continuation of the bankruptcy case or the adversary proceeding is in the best interests of creditors. Other than the Defendant, the claims are not substantial in number or amount, and, moreover, only minimally relate to prepetition business of the Debtor.

Based on the foregoing, the Court concludes that the case was filed in bad faith. See In re Nesenkeag, Inc., 131 B.R. 246, 247 (Bankr. D.N.H. 1991) ("Bad faith filing in this context does not itself mean bad mind or malicious activity, or even fraudulent activity, but simply the causing of a reorganization proceeding to be filed that does not fit within the intended scope of chapter 11 relief as that

---

[4] The Court notes that the Debtor has yet to move to retain counsel, but that the attorney has offered to subordinate his claim to the claims of the other creditors.

chapter [was] enacted by Congress."). This case is more a two-party dispute than a reorganization. The case was not filed for a bankruptcy purpose and will therefore be dismissed for cause pursuant to section 1112(b). The Court also finds that there are no unusual circumstances establishing that dismissal is not in the best interests of the creditors or the estate.

The Defendant's alternative remedy of change of venue might be appropriate if the Debtor had reason to be in bankruptcy. However, because the case has no bankruptcy purpose in any bankruptcy court, a change of venue is not appropriate. Additionally, at the October 3, 2006, hearing, the United States Trustee agreed with the Defendant that there was no reorganization purpose, noting the lack of business operations, the absence of a motion to retain counsel, and the apparent inability to pay reorganization expenses such as attorneys fees and trustee fees. Instead of dismissal, though, the Trustee advocated abstention pursuant to section 305(a), citing In re Fax Station, Inc., 118 B.R. 176 (Bankr. D.R.I. 1990). In Fax Station, like the instant case, there was pending litigation between two parties at the time of filing. The Fax Station court abstained from deciding the contested issues because those issues were not bankruptcy related. Id. at 178. The case was essentially a two-party dispute over ownership of the debtor that ought to be litigated in state court, and, once ownership of the debtor was resolved, bankruptcy relief might be appropriate. See id. ("[T]he appropriate course for this dispute is that the parties should litigate all ownership questions in the state courts, where they were initiated, and that when the real 'Mr. or Ms. Fax Station' is able to stand up, he or she may then decide whether, and in what manner, to administer the liquidation and distribution of the assets of the business."). Unlike in Fax Station, ownership of the Debtor is not in question, rather the Debtor is involved in a dispute over an asset, and the propriety of bankruptcy relief upon resolution of the Washington proceeding is far from clear. Finally, appellate review of abstention orders under section 305(a) is limited to the district court or the bankruptcy appellate panel, further making abstention "an extraordinary remedy" that is not warranted in this voluntary case. 11 U.S.C. § 305(c); King et al., Collier on Bankruptcy at ¶ 305.02 (15th rev. ed. 2006).

- 7 -

## CONCLUSION

The Defendant's motions to dismiss the bankruptcy case and adversary proceeding are granted. This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order in the bankruptcy case and a final judgment in the adversary proceeding consistent with this opinion.

DATED this 1st day of February, 2007, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Judge